All right. We'll take a couple of minutes until council are settled. All right. I think we're settled now. We can hear first from Mr. Telfian. Good morning, your honors, and may it please the court. My name is Phil Telfian, and along with my co-counsel, Lily Milwitt, I represent the plaintiffs, Camise Bedford, Ashley Gildahouse, and Lisa Mancini. This court should reverse the district court's ruling for three reasons. First, the partial relief of a temporary stay cannot terminate our interest in the complete relief of a clear driver's license. Second, the defendants have not met their burden to show that our injuries cannot recur. And third, this federal case about suspended licenses is independent from state cases about child support, meaning that neither Rooker-Feldman nor Younger can apply. I'm prepared to elaborate on each topic, but I defer first and foremost to this court's questions. The rule on standing is that if the district court was originally empowered to provide complete relief, then partial relief cannot eviscerate standing. When we filed our lawsuit in 2019, all three of our clients had suspended licenses. The district court at that point was empowered to give make-whole relief, in other words, to reverse and completely undo what we believe were unlawful and unconstitutional suspensions. That has not occurred for two of our clients. Bedford and Gildahouse currently have stays on their suspensions. The suspensions we are challenging have only been stayed. In appendix page 101, we know from the defendant's records that their own documents define a stay as, quote, temporarily stopping a suspension. And on page 22 of the appendix, we know that under the defendant's documents, the suspension itself is, quote, not terminated. In other words, Bedford and Gildahouse still have what we are alleging are unconstitutional suspensions, even though those suspensions have been stayed. We recognize that the ability to drive a car is an important aspect of having a driver's license, which Bedford and Gildahouse can do. But driving is not the only aspect, and it's not the only interest that we have in our licenses. The driver's license in this society is the most common form of identification. All of us want a clean and clear license, an unsuspended license. As we cite in our briefing, this court's opinion in Red River Freethinkers v. Fargo we think is a helpful analogy. In the Red River Freethinkers case, this court held that individuals' contact with a Ten Commandments monument sufficed for standing, that merely contacting the monument was standing. We would say, by analogy, if the state decided to put the Ten Commandments on a driver's license, they would be standing to challenge that action, even though those individuals would still be able to drive. This court said in that case, and to quote, to the extent that emotional harms differ from other, more readily quantifiable harms, that difference lacks expression in Article III's case or controversy requirement. So at the outset, one key form of injury that we still have is a form of emotional injury. We don't want suspensions on our licenses. We don't want a staid suspension on our license, particularly where that original suspension was itself unlawful. Just like any judge on this court, what we want is a clear, unsuspended license. The Supreme Court's case, the famous Live Free or Die case, we feel like illustrates another aspect. That was a case out of New Hampshire, Woolley v. Maynard, where the Supreme Court held that the state's insistence on putting the slogan on the license plate still gave rise to standing for those individuals. Again, these were individuals who were, of course, able to drive, but they had more of a psychological or emotional concern that they didn't want the state's motto appended to their license plate. What's key on the standing issue in this case we think derives directly from Article III's standing requirement. Our clients have a personal stake in this outcome. They do not want a staid suspension on their license. The plaintiffs assert, to quote the Supreme Court in Worth v. Selden, they're asserting their own legal rights and interests. This is not a metaphorical case. This is not an abstract case. This is not an advisory case. This is a case where our clients have real interest to remove what we believe were unlawful suspensions from their licenses. As we pointed out in our briefing on page 15 of our opening brief, Missouri driving records can be requested by third parties on the MVD website. Any individual with the right information can request a driving record, and that driving record for Bedford and Gildahouse will show an active suspension. It will indicate the state's suspension, but the suspension still shows on the public government record. We think there's a special rule for standing regarding public records where a government record indicates something illegal or unlawful, like we believe happened in this case. An individual has a standing interest in clearing up that record. In that way, this case is analogous to an expungement. If an individual with a criminal conviction came before this court, for example, in Missouri after three years, certain individuals are eligible to have their criminal convictions expunged. If they were challenging those due process procedures in this court, they would be standing to expunge a criminal conviction. Even if there was no ongoing sentence, even if there was no pending fine or consequence, this court would recognize that the existence of an allegedly unconstitutional conviction could be expunged despite practical real-world consequences. So we think there's an emotional injury. We think there's a public record injury. But there are also practical concerns, which we outlined in our brief. Because third parties can access driving records, employers, insurers, banks, landlords, commercial driver's licenses, rental car agencies, those seeking professional or recreational licenses, in all of these contexts, the driving record can be accessed and there would be an indication for Bedford and Gilda House of an existing suspension, though stayed, that we believe is unconstitutional and thus should be removed from their driving record. Mr. Gilda House, specifically on page 12 of the appendix, cited that multiple employers told him that even with a stayed suspension, he was not eligible for the driving jobs that he was applying for. Even with the what? A stayed suspension. Even with a stay on a suspension. He still had employers turning away. He was ineligible to reapply to renew his commercial driver's license with the stayed suspension. So we see actual practical consequences to the stayed suspension. What about Mancini? Mancini is in a different position than Bedford and Gilda House. We think it's clear that Bedford and Gilda House still have standing. Mancini has had a fully reinstated license. Her suspension has been lifted. The only injury Mancini has remaining is analogous to the criminal conviction expungement. We still think that is an injury. In other words, she has a fully reinstated license, but the unlawful suspension appears on her record. So we think that though it's a smaller injury, it still is an injury. Does that answer your Honor's question? I'm sorry. Finish up on Mancini. I just wanted to make sure that answered your Honor's question. On Gilda House, you said you're claiming or he alleged the loss of employment opportunities because apparently somebody said they wouldn't hire drivers with any kind of suspension on their records. How would the relief sought here redress that injury? Wouldn't reinstatement of the license get him his license back but still retain the previous suspension? It's a little bit premature, Your Honor. Possibly. It depends on the relief the district court pursues. So in this case, we think the district court improperly dismissed the entire case at the preliminary injunction stage. What do you mean it depends on the relief the district court pursues? I'm referring to the relief that you sought.  So we would seek in the district court the complete removal of the unlawful suspension. We haven't reached that stage in litigation is all that I meant, Your Honor. What do you mean the complete removal of it? Analogous to an expungement. Because we believe the suspension itself never should have been put in place, make whole relief or return our clients the position they were in before the agency unlawfully suspended. You think the district court would have authority to order the state to remove the history of the proceeding from its website or something? If the district court found the action to be unlawful, we think it would. The record has not been developed on whether the MVD has the technological capability, but presumably it does have the ability to do that. But I would say one more thing to Your Honor's question. Even the reinstatement of the license, in other words, the lifting of the suspension, the position that Mancini is currently in would be better for Gildahouse and Bedford. So it would be better in what sense? Would it be better in the sense of what these employers are saying? Exactly. Why? That's what I'm trying to understand, because I thought they said even though it's been stayed, the fact that you had it at one point in time, isn't that what you're alleging? No, that's precisely the issue. A stay is an inherently temporary act. It's not a full lifting of a suspension. So when the suspension is completely terminated, there's a different indication on the license. Because the stay can be removed tomorrow. It can be removed at any moment. It's a more precarious situation that Bedford and Gildahouse are both in. The stayed suspension is very different than a suspension that has been fully terminated. And that was the problem that Mr. Gildahouse ran into with the employers. Okay. I didn't understand that to be the allegation. I thought the quote from your complaint, or his declaration, was he wouldn't hire drivers with any kind of suspension on their records. That made it sound like, as an historical matter, if there's a suspension on your record, we don't hire you. I see. Is that what you meant? Is that what he meant? What he meant in the current state that he was in is that when the suspension is active, though stayed, it still creates a barrier. I don't know if he said that. Go ahead. Yeah, I think that what he actually specifically said is that even though I had a stay, my CDL was not active. And they told me that even if my CDLA had been, or CDL had been active, they could not hire me because of the suspension on my record. A second oil rig job also told me that their insurance would not allow them to hire drivers who had any kind of suspension on their records, right? And so without the equivalent of an expungement, the harm is the same, right? If understood to be even in the past, yes, Your Honor, the harm would be the same. But we think we're entitled to seek and make whole relief in this case. Before the agency unlawfully acted, Mr. Goldehouse had no suspension on his record. The only suspension that he has, past or current, is an unlawful suspension. But the key point for his standing is that he's in a worse position than even Mancini is because he has an active suspension. And this relates to the desire for an unsuspended license. So he's not even at the state that Your Honors are talking about where he has a past suspension. He still has an active suspension. This, we think, clearly indicates current standing. We haven't even turned to the mootness issues in this case. What do you mean by active? As I understand it, he's not currently suspended because he can drive, in other words. Well, there's a key difference here. He can drive, but he has a suspension that under the agency's documents is not terminated. The suspension exists, and it shows as an active suspension that has been stayed. So it's more analogous to sort of like a suspended sentence that if there's, again, tomorrow that suspension goes immediate into place with no new procedures. So stayed is kind of an intermediate category, different than a past suspension, but also different than an unstayed suspension. All of these categories, we think, give rise to standing in this case because the suspension itself was unlawful. So he's been moved from a situation where he can't drive to a situation where he has a stayed suspension, what we're sort of calling the sort of Damocles, a precarious situation. But he still has that stayed suspension, and we think we have standing to seek a fully reinstated license. Would you care to reserve for rebuttal? I'll reserve for rebuttal. Thank you, Your Honor. You may proceed if you wish. I didn't mean to cut you off. I just saw your yellow light is on. Thank you, Your Honor. You wish to reserve? You may. Okay, very well. Mr. Smith, we'll hear from you. You may proceed. Thank you. May it please the Court. There are at least three reasons that the district court could have and should have dismissed plaintiff's claims, all of which are jurisdictional issues. The first is the Rooker-Feldman Doctrine, which prohibits the district courts from reviewing and revising state court decisions when those state court decisions could have been and were not pursued through the appeal process in the state court system. The second is the Younger Abstention Doctrine, which is different, but it basically is the doctrine that has the district courts not exercise discretion, not exercise jurisdiction in cases where there would be basically a comedy issue, interference with the state court process with pending cases. And the third is the Article III standing issue that Judge Sippel, the district court, seized upon in dismissing this action at the lower court. The fact is any of those is an independent reason for this court to uphold the dismissal of the case. Separately, there's the issue of whether a preliminary injunction should have been issued. I think that issue, whether it's been conceded or not, certainly doesn't appear to be the case, but it has not been the focus of the argument. It's been a focus on the standing issue, but I do want to stress that the preliminary injunction was properly denied, not just because of the dismissal on standing grounds, but based on the fact that they simply did not meet their burden of showing an imminent need for the injunctive relief that they were seeking. And I want to talk about that a little bit, too. Before I get into this too much more, though, I want to focus on the background here. So we have three individuals who are the plaintiff appellants in this case. They all were subject to child support orders that were issued by a Missouri circuit court. In those proceedings that resulted in those child support orders, they had every opportunity to argue their ability to pay and whether a child support obligation at some certain level should be set. One of the plaintiffs admitted that he didn't contest anything. He agreed to the child support amount that he was obligated to pay. He says some reasons for that. He says his attorney told him to do it. They didn't want to argue it because he was working out of state in North Dakota. That isn't a reason to say that the order wasn't issued with absolute ability to argue those issues, present his reasons for a higher or lower amount. He had due process. He had the ability to be heard on that issue. With respect to all of them, they also, after the issuance of those orders, had the ability to go back to the Missouri state court system and to either ask for reconsideration, ask for an amendment, a modification of the order, or to appeal to the Missouri Court of Appeals if they wished to do so. Those avenues were not pursued. The fact is that what plaintiff's appellants are asking you to do is essentially to give them another avenue outside of the Missouri state court system to address their child support obligations. That's not allowed under the Rooker-Feldman Doctrine. It's also not allowed under the Younger Abstention Doctrine. For those reasons, we moved to dismiss the case early on. The district court denied our motion. Is that really what happened, though? Were you really challenging the obligation, or was the challenge the suspensions for failure to pay? Doesn't the challenge have to actually go to the due process prior to suspension for the failure to pay? In that procedural hearing, there may be a defense that says, I was unable to pay, I was indigent, I was injured, I couldn't do it, whatever, but that's a separate question than the obligation itself. What they're claiming is that the process didn't allow them to proceed that procedural due process, and that as a result, they couldn't prove up their defenses, and they were therefore deprived of fundamental due process, and this procedure is hopelessly flawed. That is their argument. And in that situation, I'm saying, well, what were they supposed to appeal? They didn't get a chance to, I mean, I don't hear them to be saying the amount was set wrong at the beginning. It said that when they suspended my license, I have some other defense. And it's important, so there's two sets of proceedings here, right? There's the child support proceeding, in which there's no reason that they couldn't have argued inability to pay, and that's the way it works. You have every ability to come in with your evidence of income and debt. But do they allow a retroactive modification in Missouri? I mean, most states only allow you to modify from the date that you claim. No, but I'm saying, so in that context, as soon as they became less able to pay that amount, if that was what really happened, then they had the opportunity to go in and seek a modification. And if they didn't do that, yeah, that same amount continues to accrue as an arrearage if they're not paying it. Right. So that, in this case, in the context of this case, that is the underlying issue, because in the intent to suspend proceedings, so once DSS gets to the point where this person hasn't paid child support for the mandated period of time, I think it's two and a half months, whatever it was, DSS is required, because of their obligations under federal regulations, to enforce that obligation. So one of their primary tools, the first step, basically, is to issue a notice of intent to suspend your license. And plaintiffs would argue that in the context of that proceeding, the state was required to let the plaintiffs come in and argue that they were unable to pay the amount that was owed. And the case that is important on this is, shoot, I think it's Harris. I'm sorry, the Herald case that we cited in the brief. It's from the Eastern District of Pennsylvania. And it's the one that Plaintiffs Appellant's counsel was on. And the idea that you have a new opportunity to come in and argue an inability to pay as a reason not to suspend the license is just as inaccurate as it was in the Eastern District of Pennsylvania case to say that you have the ability to come in and argue things like that about a case where your license is suspended for committing certain types of felonies. Plaintiffs have argued that that's a distinguishable case, because in that case, the Pennsylvania law required suspension of the license if you get the convictions, then your license is suspended. That is true, but it's not an important distinction here. Because in Missouri, DSS also does suspend the license. They do retain discretion to negotiate, basically, with the noncustodial parent to try to get some income coming in for the custodial parent and the child. So that's where they can negotiate and say, look, we're trying to work with you here and not have there be a suspension. We want you to be able to drive. Everyone recognizes that that's how people get to work. But we just need you to get in touch with us so we can talk about what can you pay. We also submitted evidence that in that negotiation process, DSS can enter into payment plans that include no payment. So even at that step, there is consideration. We showed that there was actually consideration of the ability to pay. The problem is, if you don't work out that deal, then, yeah, you still have the mandatory suspension of your license. And that's where it's not distinguishable from the Harold case in Pennsylvania. Counsel, on the preliminary injunction part of this appeal, in the motion for preliminary injunction, the plaintiffs, the movements, say that they stipulate that any and all request of relief would expire as soon as defendants adopt and implement policies and regulations pertaining to defendants' driver's license suspension processes. Did that take place? I want to make sure. You're focusing on the language where they said that the duration of that requested? Yes. And we focused on that in our briefing. The regulation, so the statute was changed in 2023. After that, the Department of Social Services began working on regulations, rules to implement the statutory change. And that took some time, but it has become an effective regulation. The argument that plaintiffs have made is that, well, it's not an effective regulation because there haven't been hearings under that regulation yet. Well, that's not the way it works. The regulation is effective. The fact that there haven't been any decisions or proceedings under it yet doesn't mean it's not an effective regulation. It just means that when those proceedings do begin again, they'll be going on under this new regulation. It's effective. But that brings me to another point. Just so I can understand, after this action was filed, the legislature passed this statute providing for some process in the driver's license suspension area. Yes. But the statute still has to be implemented by some policies and regulations of the agency. Yeah. And so back to my question. Have there been some policies and regulations? Yes. The regulations have been adopted implementing that statute. And, in fact, Plaintiffs Appellants Council provided commentary in that rulemaking process. And after that, it has become a final rule that is effective and it's in place. And, presumably, those regulations provide for people who have a stay of a suspension or receive notice and then you proceed through the process that's now provided for by both the statute and the regulations. And that's a trickier question, to be honest. So the statute doesn't provide for new hearings on people that have already had their opportunity to be heard but did not show up to be heard. So what was the point of the stay for all these people? Oh, because they stayed it for everyone after the legislature passed the law. It seems like why would you stay it if it's not going to have any impact on those folks? Well, so a couple of things have happened. So when we say stay, so I don't know if – I just want to make sure we're on the same page. So in the COVID pandemic, the beginning of the COVID pandemic, DSS stopped initiating any new license suspension proceedings. So there weren't any notices of intent to suspend going out to new people for failure to pay their child support. Those people – so if there should have been one and maybe one will come later for people who still are not paying as of today or in the future – not today because they're still not doing it – but if they decide to reinitiate those proceedings, then those new notices of intent to suspend would be subject to the new regulation, the new statute and the regulations. As for the word stay, like people, plaintiffs in this case, who contacted DSS, if you contacted DSS and talked about a payment plan, then you typically would negotiate and get a stay. You say, yeah, we'll work this out. We understand if you're not able to pay this much, maybe you can pay that much. And they work it out. And that's what happened with these folks. But it's not a one-size-fits-all kind of thing. It's a negotiation. It's trying to figure out what each person can pay because they're just trying to get as much for these children and custodial parents as they can toward raising the child. And so now there's this idea – and I know I am short on time – there's this idea that there was some set rule that if you called DSS, you automatically got a stay. There isn't evidence of that. And we presented sufficient evidence that I think is very clear that that's not the way it worked. The notion that someone from Missouri Attorney General's Office showed up at a hearing back in April or so or whenever it was of 2024 and made this statement, it's not been shown in the record. But we have shown very, very clearly that the rules, the policies, the manuals of DSS do not have such a policy. On this matter of the standing for Gildan House, there was this question about the impact on employers. And we talked about something equivalent to expungement versus what he has now. Did the rules provide for any kind of permanent removal of the fact of a prior suspension or would a resolution always retain the history of suspension on his record, even if it's resolved in his favor? Right, right, right. Well, the answer to that, if I'm being honest, is I'm not sure what the exact rules are on what he could ask for in that regard because it hasn't really been the request. What I do think is that it's not something that they're in a position to ask the federal courts to order the State of Missouri to do for multiple reasons, the jurisdictional ones first and foremost. But also, there's no evidence that they've asked the State of Missouri to do that. They should at least be required to go through an available process to seek that expungement themselves before coming here or district court and saying, order Missouri to erase this truthful record that my license was suspended. I'm trying to understand whether the relief sought would redress the injury by removing the information entirely from the record. Do you think it would not because you say they haven't asked for that relief? I don't know that they've asked. I don't believe that they've asked. And I'm not in a position to say whether, for that reason, I don't know that there's, I don't know the answer to whether they could get that from. You don't know whether the state would remove the history? If, in the event, you're saying in the event that, that what? That they succeeded in their hearing and. Yeah. If they showed that the suspension was flawed for some reason and shouldn't have been implemented, would the state then eliminate it entirely or would it just show they were suspended and it was later lifted and they're in the clear now? So, I truthfully do not know the answer to exactly how that would play out. But I do want to stress that by not going to the hearing, they've. So, the license suspension happened because they didn't go to the hearings. They did not take advantage of the opportunity to be heard on the issue of whether their license should be suspended. So, if we went to look at the record, the Missouri records would show they were suspended for failure to appear at a hearing and they were administratively suspended for nonpayment of child support. I think that's correct and I think that's what the records reflect. But then if they wanted to, they could seek a, they could pursue a petition for judicial review of that administrative decision, which they also did not do. And that's all statutorily provided for in Missouri statutes. And they also could go to Missouri State Court now, totally independent of DSS, and ask for a stay of any suspension and to reinstate driving privileges because of some hardship, all of which would have been incredibly faster than this now six-year-old litigation. Thank you for your argument. We'll hear a brief rebuttal. Counsel, is the motion for preliminary injunction moved because by its own terms, the State of Missouri has indeed adopted regulations pertaining to the driver's license suspension process? I mean, we found the regulations in the Missouri Code of Regulations annotated. So, is the, do we even need to worry about the preliminary injunction at this point? Your Honor, it's correct. It was error for the district court to dismiss the case as a whole, but the PI by its specific terms is moved. We do plan an additional preliminary injunction based on the new regulations, but the current preliminary injunction is moved. The rest of the case we think is active for sure. Briefly on the Rooker-Feldman discussion, Judge Erickson had it exactly right. And I think the key issue on Rooker-Feldman is there was no injury when the child support case concluded. When those court orders were put in place, our clients had not been injured. That happened in May of 2011 for Mr. Gildahouse. His suspension did not occur until seven years later. The injury we're challenging is an agency action having nothing to do with a state court order. For Mancini, the court order was issued in June of 2013. Five years later, the injury in this case occurred, which was her suspension. So, the causation prong of Rooker-Feldman cannot be met by opposing counsel because there was no injury caused by the mere existence of a child support order. What about the, what seems to be the argument is that failure to avail yourself of the process that did exist, which would have allowed for a procedural process in front of the agency and the right to appeal for review, that somehow that that implicates Rooker-Feldman. Thank you, Your Honor. Two quick points. First, when Gildahouse, Mancini, and Bedford suspensions were put in place, there were no procedures. It's only under the new regulations that such procedures exist. There were no procedures at all? None at all. And second, the current regulation gives no relief to Bedford or Gildahouse. To Your Honor's question about state suspensions, the current regulation cannot address the situation at Bedford and Gildahouse. And I'd be remiss to Chief Judge Gallatin's question if I didn't mention appendix. We'll give you a little extra time to answer that question. Go ahead. Thank you. Just to combine both questions, Chief Judge Gallatin, to emphasize, on page 22 of the record, the defendant's documents define a stayed suspension. So I request that the court look at that. Look at that. And what do you mean by page 22 of the record? Do you mean of the appendix? Separate appendix 22, yes, Your Honor. Your separate appendix? Our separate appendix. All right. On page 22. And what Your Honors will find is that a stayed suspension is a much worse state of affairs than even a terminated suspension. In other words, it's not quite even going so far as Chief Judge Gallatin was asking about an expungement, which is relief we will eventually seek in this case. But we're not even at that stage because we still have stayed suspensions, which the documents define as a worse scenario. How so? On page 22, we see that a stayed suspension is defined as to stop or hold the suspension order in advance. In other words, there's an active suspension order that's being held in advance. So it's an intermediate stage. We're currently suspended with our orders in advance, kind of like a suspended sentence in a criminal case. Well, it's not like a suspended. I don't understand that. I mean, you're able to drive. We're able to drive, but that stay can be lifted at any time by the agency. So it's different than an unsuspended license where the agency would be required to initiate procedures. In other words, there's no additional notice. But, yes, we're able to drive, but we're in a position that puts us in a more precarious situation than someone without a suspension. Thank you for your argument. For these reasons, we respectfully request that this court reverse the district court ruling below. Thank you, Your Honor. Thank you very much. Thank you to both counsel. The case is submitted, and the court will file a decision in due course.